IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | | |
|---|---|---|
| Helen Jordan | : | |
| | : | |
| Plaintiff | : | Case No. C-1-04-296 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Thomas & Thomas, Attorneys | : | |
| at Law, et al. | : | ORDER DENYING DEFENDANTS' |
| | : | MOTION FOR SUMMARY |
| Defendants | : | JUDGMENT |
| | : | |

This matter comes before the Court on the Motion for Summary Judgment of Defendants

Thomas & Thomas Attorneys at Law and Ernest V. Thomas, III (doc. 29), Plaintiff Helen

Jordan's Memorandum in Opposition to Motion for Summary Judgment (doc. 32), and

Defendants' reply thereto (doc. 34).  For the reasons set forth below, the Court **DENIES**

Defendants' Motion for Summary Judgment.

Plaintiff Jordan filed a class action complaint[1] on April 28, 2004 alleging that Defendants

violated two provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§

1692e(1) and 1692f by "executing false affidavits to garnish bank accounts."  (Doc. 1, ¶ 1.)

Jordan's personal claims arise from Defendants' efforts to collect on a judgment entered against

Jordan in favor of Discover Bank, issuer of her Discover Card, through its servicing agent

---

[1] Jordan has also filed a Motion for Class Certification (doc. 16).  The Court reserves judgment on class certification at this time.

Discover Financial Services ("Discover") for her past-due credit card balance.

## I.      BACKGROUND

Plaintiff Helen Jordan is a sixty-five year old resident of Ironton, Ohio, who is currently receiving social security benefits.  Defendants are Thomas & Thomas Attorneys ("Thomas & Thomas"), a law firm, and  Ernest V. Thomas, III ("Thomas"), an attorney at Thomas and Thomas (collectively, "Defendants").  Defendants represent creditors in their attempts to collect delinquent debt.

### A.      Thomas & Thomas' General Procedure Regarding Discover Accounts

Discover is Thomas & Thomas' largest client; it provides between forty and fifty percent of Thomas & Thomas' business.  (Thomas Dep. 18, doc. 25.)  Thomas & Thomas provides debt collection services to Discover on a contingent fee basis, retaining twenty-four percent of its gross collection for Discover.  (Id. at 20.)

Several times a month, Discover sends an electronic file to Thomas & Thomas.  (Id. at 41.)  The file contains accounts for collection.  (Id.)  On average, Thomas & Thomas receives about four hundred accounts from Discover per month.  (Id. at 42.)  Discover does not forward all of its notes about each debtor's account.  For example, Discover may have information about a debtor's various sources of income, but it does not provide this information to Thomas & Thomas.  (Id. at 130.)  Instead, Discover typically provides a basic summary of information about the debtor's  bank accounts, real estate holdings, and an "asset telephone number"[2] for

---

[2] The "asset telephone number" differs for each debtor and may be, for example, an employer's or a bank's telephone number.

each account debtor.  (Id. at 129, 132.)  As part of its business arrangement, Thomas & Thomas investigates the debtor's assets and sources of income based upon the information that Discover provides and is expected not to request additional information from Discover unless necessary. (Id. at 146-47.)

When Thomas & Thomas receives a file of accounts from Discover, it downloads the file to its computer system.  One or more of Thomas & Thomas' employees then 1) checks to see if there are any debtors listed with whom Thomas & Thomas has had a prior interaction; 2) assigns each account to a collector, a paralegal, and an attorney; 3) sends an FDCPA disclosure letter to each debtor; and 4) enters each debtor into the diary queue[3] of the collector to whom that debtor's account is assigned.  (Id. at 41, 55.)

Aside from general information about each debtor and the debtor's account, Discover also mails Thomas & Thomas a copy of the last statement it generated on the debtor's account. (See id. at 74-75, 107-08.)  Thomas & Thomas places each statement into the corresponding debtor's paper file and scans it into the debtor's electronic file.  (Id. at 75.)  The bulk of the information Thomas & Thomas accumulates about each debtor is stored in the respective debtor's electronic file rather than his or her paper file.  For example, each electronic file contains notes about telephone contacts and documents the actions that Thomas & Thomas personnel take with regard to that debtor.  (Id. at 75, Ex. 4.)

Some of the information gleaned from these contacts is considered priority information.

---

[3] The diary queue tracks the dates on which certain actions are taken for each account. (Thomas Dep. 55.)  The diary is set up such that a debtor's account is automatically scheduled to appear at the top of the collector's, paralegal's, and attorney's queue on a specified date so they know to review the account file or perform some activity related to the account that day.  (Id.)

(<u>Id.</u> at 127.)  This information is not only entered in the routine notes section but is also placed in a priority notes section.  When opening a debtor's electronic file, the first page to appear on the screen shows the priority notes, which may include notices that a debtor has, for example, filed for bankruptcy, passed away, or requested that Thomas & Thomas not contact him or her at work.  Additionally, the priority notes may include information about the debtor's income or accounts.  For example, if a collector or an attorney learns that the debtor has a bank account, is employed, or owns real estate, or if the collector learns to the contrary that the debtor's sole source of income is exempt, the collector would enter such information as a priority note.  (<u>Id.</u>)  Thomas & Thomas expects that everyone who works on a particular account will read the priority notes before taking any action.  (<u>Id.</u> at 198.)  Though Thomas & Thomas trains its collectors to review all of the notes before taking any action, the collectors typically pay greater attention to the priority notes than to the routine notes.

Thomas & Thomas' contact with each debtor typically begins with the issuance of an FDCPA disclosure letter.  When the letter is issued, the diary for that debtor's account is automatically queued to send a follow-up letter within a certain period of time unless Thomas & Thomas receive a response of some kind and the diary is changed.  (<u>Id.</u> at 60-61, 66-67.)  Discover requires Thomas & Thomas to file suit no later than sixty days from the date that Discover originally forwarded the account, unless the debtor has already made payment arrangements.  (<u>Id.</u> at 69.)  In cases wherein Thomas & Thomas files suit and obtains a judgment against the debtor, the next step is to determine how it should execute the judgment.  For example, Thomas & Thomas may place a lien on the debtor's real property or attempt to garnish the debtor's wages or other income.

4

Often, the collector makes the initial decision about how to proceed on a given account. Thomas & Thomas does not have a general training or procedures manual for its collectors, but it does have a manual that two Thomas & Thomas attorneys drafted to describe the procedures for handling Discover accounts in particular.  (Id. at 49, 52.)  To train new collectors, the firm assigns them to work with experienced collectors and requires them to watch a DVD program that provides information about FDCPA compliance.  (Id. at 48, 52.)  Thomas & Thomas also randomly records phone calls that collectors make to debtors in order to monitor its FDCPA compliance and improve collectors' techniques.  (Id. at 59.)

In the event that a collector decides to garnish a debtor's bank account, as occurred in this case, the collector makes a note to that effect in the debtor's electronic file.  (Id. at 100-01, 112.) That note prompts a member of the clerical staff to generate a non-wage garnishment form. (Id. at 116.)  Both the accounting department and the attorney in charge of the account review the form.  (Id. at 116.)  The attorney makes the ultimate decision about whether or not to proceed with the garnishment.  (Id.)  If the attorney finds reason to suspect that the funds in the account to be garnished are entirely exempt, the attorney postpones authorization of the garnishment proceeding until further inquiry can be made.  (Id. at 229.)

Thomas & Thomas trains collectors not to garnish a bank account if the firm has knowledge that the account contains only exempt funds.  (Id. at 200.)  However, there is no set policy for investigating the source of funds in a debtor's bank account.  (Id. at 227.)  Typically, the attorney and collector review the notes and any documents scanned into the file.  (Id. at 229.) They do not subpoena bank records prior to first attempting to attach the bank account.  In fact, Defendant Thomas testified that he was not aware of any mechanism to do so under Ohio law.

5

Additionally, Thomas stated that a collector or attorney could not simply request the debtor's records from the bank because banks generally will not release such information without their client's consent.  (Id. at 230.)  Rarely, Thomas & Thomas may send a request for admissions to the debtor that includes inquiries about the debtor's bank accounts, but this is not a standard policy.  (Id. at 231, 241.)

Under certain limited circumstances, Thomas & Thomas may perform a judgment debtor examination before attempting a non-wage garnishment.  (Id. at 241-42.)  Typically, if Defendants have a means of readily collecting on a judgment, such as where they have employment information for the debtor or knowledge of an active bank account, they try to attach the debtors wages and accounts prior to performing a judgment debtor examination.  (Id. at 242.)  Thomas & Thomas generally disfavors judgment debtor exams because it believes them to be a "waste of time and money."  (Id.)  According to Defendant Thomas, debtors rarely appear for the examinations and often "the bailiffs that are charged with serving the notice to appear do not accomplish their task, so it results in increasing the court costs that the defendant is responsible for without producing any information that's going to allow [Thomas & Thomas] to collect the judgment."  (Id.)

In pursuing a garnishment, Thomas & Thomas must comply with the procedures set forth in the Ohio Revised Code.  Section 2716.11 of the Ohio Revised Code governs the commencement of non-wage garnishment proceedings.  At the time of the events that occurred in this action, that section stated:

> A proceeding for garnishment of property, other than personal earnings, may be commenced after a judgment has been obtained by a judgment creditor by the filing of an affidavit in writing made by the judgment creditor or the judgment

creditor's attorney setting forth all of the following:

(A) The name of the judgment debtor whose property, other than personal earnings, the judgment creditor seeks to garnish;

(B) That the affiant has good reason to believe and does believe that the person named in the affidavit as the garnishee has property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States;

(C) A description of the property.

Ohio Rev. Code § 2716.11 (2004).[4]  Certain sorts of assets, including social security payments, are statutorily exempt from attachment by creditors.  See, e.g., 42 U.S.C. § 407(a); Ohio Rev. Code § 2329.66; In re Alam, 359 B.R. 142, 150 (6th Cir. BAP 2006).  Upon the filing of an affidavit pursuant to § 2716.11, the clerk of the appropriate Ohio court "shall" issue to the garnishee copies of an order of garnishment of property that "shall bind the property, other than personal earnings, of the judgment debtor in the possession of the garnishee at the time of service."  Ohio Rev. Code § 2716.13.  The statute provides that the order of garnishment and notice to answer must be "substantially" in a certain form as provided in section 2716.13(B):

_____

[4]  The current version of Ohio Rev. Code § 2716.11 provides as follows:

A proceeding for garnishment of property, other than personal earnings, may be commenced after a judgment has been obtained by a judgment creditor by the filing of an affidavit in writing made by the judgment creditor or the judgment creditor's attorney setting forth all of the following:
(A) The name of the judgment debtor whose property, other than personal earnings, the judgment creditor seeks to garnish;
(B) That the affiant has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States;
(C) A description of the property.

(Emphasis added).

7

> The judgment creditor in the above case has filed an affidavit, satisfactory to the undersigned, in this Court stating that you have money, property, or credits, other than personal earnings, in your hands or under your control that belong to the judgment debtor, and that some of the money, property, or credits may not be exempt from garnishment under the laws of the State of Ohio or the laws of the United States.

Ohio Rev.Code § 2716.13(B).  The clerk of the court also must warn the judgment debtor in writing that if he does not request a hearing within five days, he waives his right to a hearing and some of his money, property or credits will be paid to the judgment creditor to satisfy the debtor's debt.  See Ohio Rev. Code § 2716.13(C)(1).

Defendant Thomas testified during his deposition that in his experience, when Thomas & Thomas files a non-wage garnishment action as to an account that contains exempt funds, the court notifies the judgment debtor of his or her right to request a hearing.  (Id. at 256.)  If the debtor requests a hearing, then the judge or magistrate determines which funds are exempt and release any non-exempt funds up to the amount of the judgment to Thomas & Thomas.  (Id.)

## B.    Jordan's Claim Regarding Thomas & Thomas' Collection Actions

Jordan claims that Thomas & Thomas violated the FDCPA when it initiated garnishment proceedings against her.  Jordan owed $11,585.96 on her account with Discover.  (Thomas Dep. Ex. 4.)  Discover sent Jordan's account to Thomas & Thomas for collection on August 5, 2002.  (Id.)  On September 11, 2002, Thomas & Thomas filed suit against Jordan in Ironton Municipal Court.  (Id. at 167.)  Jordan was served on September 14, 2002.  (Id. at 178.)  Shortly after Thomas & Thomas filed suit against Jordan, she spoke with the collector assigned to her account and told him that she was receiving social security benefits and would send proof of her income.  (Thomas Dep. 168.)  The collector noted this in her electronic file but did not mark it as a

priority note.  (Id. at 168-70.)  Following that conversation, on October 9, 2002, Jordan sent

Thomas & Thomas a copy of its complaint with a handwritten note at the bottom stating, "I

Helen Jordan owe this Bill but I have no means of paying.  I am sending my income."  (Id. at

177, 247, Ex. 8.)  Attached to the note was a letter from the Social Security Administration

stating that Jordan receives a regular monthly social security payment of $509.  (Id.)

Meanwhile, on or about October 17, 2002, Thomas & Thomas filed a Motion for Default

Judgment, which the court granted on October 24, 2002.  (Id.)

     Over the course of the next year, Thomas & Thomas explored various avenues for

recovering the judgment.  Late in January 2004, a part-time collector who was investigating

Jordan's assets discovered that Jordan had a checking account at National City and suggested

that Thomas & Thomas garnish the account.  (Id. at 195-96.)  Prior to filing the garnishment

action on February 11, 2004, Defendant Thomas reviewed Jordan's file and signed an affidavit

stating the following, in accordance with Ohio Rev. Code § 2716.11:

> The undersigned, being first duly cautioned and sworn, affirmed according
> to law, says that I am the Judgment Creditor Attorney for Judgment Creditor
> herein, and that ... the affiant has good reason to believe and does believe that
> National City Bank has property other than personal earnings of the Judgment
> Debtor that is not exempt under the laws of the State of Ohio or the United States.
> DESCRIPTION OF PROPERTY: Monies of any kind due or to become due,
> including, but not limited to, monies found in any bank accounts, safety deposit
> accounts, CDs, and merchant credit card accounts.

(See doc. 1, Ex. A.)  On February 17, 2004, the Ironton Municipal Court issued an order of

garnishment that froze Jordan's checking account.  (Thomas Aff. ¶ 5.)  Shortly thereafter, the

court sent Jordan a notice of the order, informing her that certain benefits, including social

security income, are exempt under Ohio law and cannot be seized in satisfaction of a debt.  (See

Thomas Dep. Ex. 2.)  The notice further informed Jordan that she had the right to request a hearing in the event she disputed the creditor's right to garnish her account and set forth the procedure for requesting said hearing.  (Id.)

At the time that Defendants garnished her account, it held approximately $88.  Jordan depended on this account to cover basic living expenses, and when she discovered that she could no longer withdraw funds from the account she had to borrow money from her brother for food and gas.  (Jordan Dep. 66-67.)  Jordan obtained assistance from Legal Aid, and on February 25, 2004, her attorney called Defendants to notify them that Jordan's account contained only social security income and was exempt from garnishment.  That same day, Jordan's attorney faxed proof of Jordan's income to Defendants.  Defendants released the garnishment after speaking with Jordan's attorney.  (Thomas Dep. 206; Thomas Aff. ¶¶ 6-7.)

Shortly thereafter, Jordan filed the instant suit, alleging that Defendants should have known that her account contained only exempt funds and violated the FDCPA by filing an affidavit in which Defendant Thomas falsely stated that he had a "good reason to believe" that the account contained nonexempt funds.  (See doc. 1, Ex. A.)

## II.    JURISDICTION AND LEGAL STANDARD

The FDCPA specifically provides for federal jurisdiction over claims made pursuant to the Act, see 15 U.S.C. § 1692k(d), and the Court has federal question jurisdiction under 28 U.S.C. § 1331.  Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact are in dispute, and the Court must read the evidence, together with all inferences

10

that can permissibly be drawn therefrom, in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law."  Id. at 252.

## III.    ANALYSIS

Jordan brings claims under 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt."  (See doc. 1 ¶¶20-22.)  Specifically, Jordan argues that Defendants violated §§ 1692e(10) and 1692f by attaching a false affidavit to a garnishment complaint against her without a "factual basis for believing [her bank] account contained non-exempt assets" that could be garnished.  (See id. at ¶¶ 19-20.)

The FDCPA was enacted "to eliminate abusive debt collection practices by debt

11

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); accord Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003).  In determining whether any particular conduct violates the FDCPA, courts apply an objective test based on the least sophisticated consumer.  See Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 329 (6th Cir. 2006); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1029 (6th Cir. 1992).  As a preliminary matter, the Court notes that Defendants, attorney debt collectors regularly engaged in consumer debt-collection litigation, are subject to the strictures of the FDCPA.  See Heintz v. Jenkins, 514 U.S. 291, 294 (1995).[5]

Though they do not dispute their status as debt collectors under the FDCPA, Defendants argue that Plaintiff's claims fail as a matter of law because: (1) the claims are barred by the doctrine of absolute witness immunity; (2) the claims are not, as a matter of public policy, actionable under the FDCPA; and (3) Plaintiff cannot prove her claims under 15 U.S.C. §§ 1692e(10) and 1692f because Plaintiff fails to establish that Defendants made any false or misleading representations and no reasonable fact-finder could conclude that Defendant Thomas

_____

[5] For the Defendants to be liable under the FDCPA, they must fall within the FDCPA's definition of a "debt collector."  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  See 15 U.S.C. § 1692a(6).
Jordan has alleged that Thomas & Thomas and Ernest Thomas are a law firm and attorney, respectively, who are debt collectors within the meaning of 15 U.S.C. § 1692(a)(6). (See doc. 1 ¶¶ 1,4,5.)  The Supreme Court has held that lawyers and their law firms who regularly engage in consumer debt-collection litigation qualify as "debt collectors" under the FDCPA, and thus may be held liable under its provisions.  See Heintz, 514 U.S. at 291. Defendants have not challenged their categorization as debt collectors.

lacked reason to believe that Plaintiff's account contained non-exempt funds.  Plaintiff responds that the doctrine of absolute witness immunity is inapplicable in this case and that questions of fact remain that preclude summary judgment.  The Court addresses each argument below.

### A.      Absolute Witness Immunity

Defendants argue that under the doctrine of absolute witness immunity, they are immune from liability for statements made in the course of judicial proceedings, such as the garnishment affidavit.  As Defendants note, this Court addressed the issue of absolute witness immunity and the FDCPA in Todd v. Weltman, Weinberg, & Reis, Co., L.P.A., 348 F. Supp. 903, 914 (S.D. Ohio 2004).  In Todd, this Court held that witness immunity does not bar claims under the FDCPA based upon a defendant's filing of an allegedly defective affidavit in a garnishment proceeding to collect a debt.  Id.  As Defendants acknowledge, at the time they filed their Motion for Summary Judgment, Todd was on appeal to the Sixth Circuit.  The Sixth Circuit has since affirmed this Court's opinion in Todd.  See Todd v. Weltman, Weinberg, & Reis, Co., L.P.A., 434 F.3d 432, 447 (6th Cir. 2006); see also Gionis v. Javitch, Block & Rathbone, LLP, Nos. 06-3048 & 06-3171, 2007 WL 1654357, at *2 (6th Cir. June 6, 2007) ("[W]e have held that while testimony presented in the form of an affidavit may be protected under absolute witness immunity, the immunity does not extend to 'complaining witnesses'– those who help instigate the judicial process by swearing to tell the truth." (internal citations and quotations omitted)).  Consequently, Defendants are not protected from this suit under the doctrine of absolute witness immunity.

### B.      Public Policy Argument

Plaintiff contends that Defendants violated 15 U.S.C. §§ 1692e(10) and 1692f by executing and filing a false affidavit in support of the non-wage garnishment proceeding against Plaintiff. Defendants argue that the kind of conduct alleged in this case – specifically, the making of a false statement to a court to commence garnishment proceedings – is not the kind of false or unconscionable conduct that the FDCPA was enacted to prevent. (Doc. # 29 at 13.) Defendants cite no authority for that specific proposition. Rather, Defendants cite to Kropelnicki v. Siegel, for the following general proposition:

> The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."

290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95-382, at 2 (1977)). According to Defendants, Congress intended the FDCPA to regulate communications made to debtors and does not govern communications made to courts.

To hold as such would allow collectors, under circumstances such as those alleged in the instant case, to accomplish through official legal proceedings the unfair and harassing practices expressly prohibited by the FDCPA. Indeed, this Court has previously found, in a case involving facts very similar to those alleged in the instant case, that "[f]orbidding debt collectors from making false statements to courts accords with the FDCPA's purpose of protecting consumers from unfair and harassing debt collection practices." Todd, 348 F. Supp. 2d at 914. The Court also noted in Todd that "under the Ohio statutory garnishment scheme, once the garnishee completes its section of the order of garnishment form, which includes the debt collector's

affidavit, it is distributed to the debtor, who may be misled by statements about non-exempt

assets contained therein." Id. at 914. The prevention of such conduct falls squarely within the

purpose of the FDCPA. See 15 U.S.C. § 1692(e).

      **C.**      **Statutory Arguments**

            **1.**      **Ohio Law Governing Garnishment Procedures**

As highlighted by the preceding analysis, an exploration into the nature of the affidavit

requirement under Ohio law governing garnishment procedures is a necessary predicate to

determining whether Defendants' actions violated the FDCPA. As set forth above, at the time

Defendant Thomas executed the affidavit in question, Ohio law permitted judgment creditors to

commence non-wage garnishment procedures only upon filing an affidavit setting forth that he

or she "has good reason to believe and does believe" that the account the creditor sought to

garnish contained non-exempt funds. See Ohio Rev. Code § 2716.11 (2004). Then, if the state

court found the affidavit to be satisfactory, it issued an order to the garnishee to hold the debtor's

property and sent notice of the garnishment to the debtor. See id. at § 2716.13. In the event that

the debtor believed that any or all of the funds in the account were exempt, Ohio law placed the

burden on the debtor to request a hearing and to prove the exempt status of the funds. See id.

Defendants interpret this procedure to mean that under Ohio law, funds are presumed to

be non-exempt unless and until the debtor proves otherwise. Further, Defendants argue that debt

collectors may rely solely on this presumption when swearing in an affidavit that they have

"reason to believe" the debtor's account contains non-exempt funds. In other words, such a

statement can never, as a matter of law, be false or misleading.

15

Defendants cite several cases that they claim support by analogy their interpretation of Ohio law. For example, Defendants cite Shrestha v. Nadel, No. CIVA3:99CV00554(AWT), 2001 WL 286852 (D. Conn. March 21, 2001), a case factually similar to the instant case in that the plaintiff sued the defendant debt collector under the FDCPA for attempting to garnish an account containing only exempt funds. The plaintiff alleged that the defendant knew or should have known that all of the funds in the garnished account were exempt. The district court found that the defendant did not violate the FDCPA by attempting to garnish the plaintiff's account because under Connecticut law, exemptions are not self-executing and the plaintiff had a duty to claim the exemption after receiving notice of the garnishment. Id. at *3. Though factually similar, Shrestha has no bearing on the instant case, as there was no allegation in Shrestha that the debt collector signed a false affidavit stating he had reason to believe the plaintiff's account contained non-exempt funds, nor any indication that Connecticut law requires debt collectors to swear to such knowledge upon petitioning for a non-wage garnishment.

Defendants also cite Wilson v. Business & Professional Credit Mgmt. of Kearney, Inc., No. CV85-L-709, 1986 U.S. Dist. LEXIS 31002, at *14 (D. Neb. Aug 26, 1986), a similar case in which the district court held that the defendant debt collector did not violate the FDCPA by garnishing the plaintiff's account because "it could not be certain that there were no exempt funds in the joint checking account prior to a resolution of the garnishment action." Wilson is distinguishable on the same basis as Shrestha. Additionally, in Wilson, the district court noted that under Nebraska law, the defendants lacked the option of conducting a debtor's exam to determine the content of the plaintiff's accounts prior to initiating the garnishment proceeding. Id. Such is not the case under Ohio law. See Todd, 348 F. Supp. 2d at 915.

While Defendants' argument is compelling, the Court would necessarily be forced to ignore the plain language of Ohio Rev. Code § 2716.11 were it to read into that statute the presumption upon which Defendants claim reliance.  Few if any Ohio courts have addressed the question of whether Ohio garnishment law allows collectors to rely on a presumption that the contents of a debtors account are non-exempt.  Neither has the Sixth Circuit directly tackled this question.  Nonetheless, the Court finds guidance in recent dicta suggesting that the Sixth Circuit would also reject the assertion of such a presumption.  For example in Todd, 434 F.3d at 432, a case involving circumstances factually similar to those of the instant case, the Sixth Circuit noted that the defendant debt collector " may actually be forced to obey Ohio law and conduct some sort of preliminary investigation of a debtor's assets to determine whether they are exempt."

Furthermore, the Court simply cannot reconcile the existence of such a presumption with the express language of former Ohio Rev. Code § 2716.11.  The affidavit requirement set forth in the former version of § 2716.11 combines both an objective and a subjective component.[6]  The affiant must not only swear to an actual belief that the debtor's account contains non-exempt funds; he or she must also swear to having good reason for holding this belief.  In other words, the affiant must swear that there exists support for that belief.  It is undisputed that the debtor holds the ultimate burden of proof with regard to demonstrating the exempt status of any of his or her assets.  See Monogram Credit Card Bank of Georgia v. Hoffman, No. 14-02-24, 2003 WL 1618004, at *2 (Ohio App. 3d Dist. May 31, 2003).  Nonetheless, by requiring a judgment

---

[6] Defendants' position would be more tenable if Ohio Rev. Code § 2716.11 required the affiant to state only that he or she has *no basis* to believe the account contains solely exempt funds rather than requiring the affiant to affirmatively state to having *good reason* to believe that the account contains non-exempt funds.

creditor to file an affidavit, swearing under oath that he or she "has reason to believe" that the debtor's account contains non-exempt funds, Ohio law places at least some initial burden on the creditor to investigate the nature of the funds in the debtor's account.[7]  See id. (recognizing that though the debtor carries the ultimate burden of proving an exemption, § 2716.11 first requires "the creditor to affirm that he has good reason to believe that the garnishment is proper and that the funds being sought are not exempt" (quoting Ashtabula County Medical Center v. Douglass, No. 1331, 1988 WL 59836, at *2 (Ohio App. 11th Dist. June 3, 1988))).

The Court need not determine at this time the precise nature of this initial burden as it will differ from case to case based on the circumstances the debt collector faces.  In other words, the Court cannot isolate a single course of action, such as the completion of a judgment debtor's exam, that would satisfy the requirements of Ohio Rev. Code § 2716.11.  Indeed, such exams are costly and in many cases may be of little assistance.  What is important in each case is that the creditor must undertake an investigation reasonably calculated to determine the contents of the debtor's accounts.

### 2.       Potential Conflict Between the FDCPA and Ohio Law

Defendants next argue that any finding that they violated the FDCPA will pit the requirements of the FDCPA against those established by state law.  According to Defendants, the FDCPA prohibits claims such as those brought by Jordan to the extent that those claims seek to

---

[7] The affidavit that Defendant Thomas signed was the preprinted form required by the Ironton, Ohio Municipal Court.  Because of this, Defendants argue, Thomas had no discretion in the language attested to and cannot be held liable for making a false statement on that form.  This argument ignores the fact that, whether preprinted or not, Thomas swore under oath to the truth of the statements appearing on the form.

alter state law. Defendants point specifically to § 1962(n), which provides that "this subchapter does not annul, alter, or affect . . . the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."

Defendants' argument is misplaced because Plaintiff does not allege that Ohio's garnishment procedures are in conflict with the FDCPA. To the contrary, Plaintiff alleges that Defendants' failure to comply with Ohio law – namely the requirement set forth in Ohio Rev. Code § 2716.11(B) that a collector have reason to believe that an account contains non-exempt funds before initiating and action to garnish that account – amounted to a violation of the FDCPA.

### 3. FDCPA Claim Under 15 U.S.C. § 1692e(10)

Section 1692e(10) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including specifically "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Jordan claims that Defendants violated Section 1692e(10) by attaching an affidavit in which Defendant Thomas stated he had "good reason to believe and does believe that National City Bank has property other than personal earnings of the Judgment Debtor that is not exempt under the laws of the State of Ohio or the United States," when in fact Defendants did not have a factual basis for that belief. (Doc. 1 ¶¶ 19, 20, Ex. A.) Defendants move for summary judgment as to this claim on the basis that

19

there exist no genuine issues of material fact[8] and that their actions did not violate § 1692e(10) because: (1) the garnishment affidavit does not constitute a "communication" under the FDCPA; and (2) Jordan can set forth no facts showing that the garnishment affidavit was false, deceptive, or misleading.

Beginning with the communication issue, Defendants argue that "[b]efore any representation can be found to be false, deceptive, or misleading, the representation must be made in the form of a communication,"  (see doc. 29 at 6), and cite several cases for the proposition that a document submitted to the Court in a civil action does not constitute a communication under the FDCPA.  (See doc. 29 at 6-7, citing Vega v. McCay, 351 F.3d 1334, 1335 (11th Cir. 2003); McKnight v. Benitez, 176 F. Supp. 2d 1301, 1308 (M.D. Fl. 2001); Chapman v. Fisher, No. 01 C 5166, 2001 WL 1414480 (N.D. Ill. Nov. 9, 2001)).[9]

_____

[8] Jordan argues that the question of whether a debt collector's conduct is deceptive, unfair, or unconscionable under the FDCPA is an inherent question of fact and must be submitted to a jury.  As Defendants point out, while that question might be one of fact for a jury, it might also be decided as a matter of law.  Compare Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 998 (7th Cir. 2003) (question of violation of section 1692e was for jury, but violation of section 1692f was decided by court as a matter of law), with Alexander v. Unlimited Profress Corp., No. 02 C 2063, 2004 WL 2384654, at *3 (N.D. Ill. Oct. 20, 2004) (distinguishing Turner, court granted summary judgment to plaintiff on section 1692e claim); see also Dutton v. Wolpoff and Abramson, 5 F.3d 649, 657-58 (3rd Cir. 1993) (court did not err in permitting jury to decide whether letter to debtor was false representation under 1692e(10)); Broadnax v. Greene Credit Service, No. 95-3829, 1997 WL 14777, at **4 (6th Cir. Jan. 15, 1997) (question of whether defendant made a false representation is for "trier of fact").  The ultimate determination of whether certain conduct is deceptive, unfair, or unconscionable may often turn on questions of fact that preclude summary judgment.  However, there may also be cases in which the parties do not dispute the allegedly deceptive, unfair, or unconscionable conduct, in which event the court may determine as a matter of law whether the undisputed conduct amounts of a violation of the FDCPA.

[9] Defendants' citation of Chapman is at best, a misreading, and at worst, intentionally misleading.  In Chapman, 2001 WL 1414480, at *1, the Court held that a law firm that made an offer on behalf of its creditor-client to settle a claim against the debtor in a bankruptcy

20

As indicated in Todd, 348 F. Supp. 2d at 914, these cases are wholly inapplicable in the instant context.  Both Vega and McKnight addressed alleged violations of FDCPA notice requirements set forth in 15 U.S.C. § 1692g, which requires debt collectors to send notice to each debtor containing specific information about the nature of the debt and the debt collection process within "five days after the initial communication with" the debtor.  Because § 1692g's notice requirements are not triggered until there has been an "initial communication," there can be no violation of that section unless the debt collector has taken some act that qualifies as such. See McKnight, 176 F. Supp. 2d at 1304.  By contrast, there is no reference to an "initial communication" in either section 1692e(10) or 1692(f), and neither section bases liability upon such a communication having occurred.  See Todd, 348 F. Supp. 2d at 914; Etapa v. Asset Acceptance Corp., No. 03-86-KSF, 2004 U.S. Dist. LEXIS 27315, at *13-14 (E.D. Ky. April 29, 2004).  Nor does the Court find any precedent suggesting that the FDCPA only covers "communications," as Defendants suggest.

Indeed, the Court finds no support for the assertion that Jordan must prove the garnishment affidavit and petition constitute a "communication," either initial or otherwise, in order to prove Defendants violated §§ 1692e(10) or 1692f.  Id.  To the extent Defendants' argument was an unartful attempt to state that the filing of a garnishment petition cannot be

---

proceeding was not liable under various unspecified provisions of the FDCPA for making that settlement offer.  Id.  The Chapman Court cited Heintz, 514 U.S. at 294, for the proposition that attorneys who regularly engage in debt collection can be held liable under the FDCPA, but attorneys who are merely engaged in litigation activities can not violate the FDCPA.  Id.  The Court held that the law firm was not liable under the FDCPA because it was merely engaging in litigation activities.  The Chapman Court did not consider, and Chapman certainly does not stand for, the proposition that "a document submitted to the Court in a civil action does not constitute a communication under the FDCPA."

deceptive or misleading to the objective "unsophisticated consumer" because the petition is targeted toward the court rather than to the consumer, this Court has already found that the filing of a false affidavit in support of a garnishment petition under circumstances such as occurred in this case could be misleading to the unsophisticated consumer. Todd, 348 F. Supp. 2d at 914 ("[U]nder the Ohio statutory garnishment scheme, once the garnishee completes its section of the order of garnishment form, which includes the debt collector's affidavit, it is distributed to the debtor, who may be misled by statements about non-exempt assets contained therein.").[10]

　　　Turning next to the truth of the statements in the garnishment affidavit, Defendants contend that the facts on record show that Thomas had good reason to believe and did believe that Jordan's account contained non-exempt assets at the time he filed the affidavit. Further, Defendants claim that Jordan can point to no evidence suggesting otherwise.[11] Defendants admit that prior to instituting the garnishment proceedings, Jordan had told them that she received social security income. However, they maintain that she never stated that this was her sole

---

　　　[10] More generally, several courts, including this one, have recognized claims under section 1692e arising from a debt collector's false statement in a complaint or attachment of a false affidavit to a complaint. See, e.g., Todd, 348 F. Supp. 2d at 914 (allegedly false statement in affidavit attached to garnishment complaint); Lee v Javitch, Block & Rathbone, LLP, 484 F. Supp. 2d. 816 (S.D. Ohio 2007) (same); Broadnax, 1997 WL 14777, at *4 (false declaration in criminal complaint alleging defendant passed a bad check); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2002) (affidavit falsely claimed collector was subrogee of original creditor).

　　　[11] Once again, in trying to demonstrate a good faith belief in the truth of the affidavit, Defendants argue that Thomas was entitled to rely on a presumption that the funds were nonexempt, stating that "Thomas had no reason to believe any of the funds in Plaintiff's account were exempt unless and until Plaintiff proved to the Ohio Court that they were exempt." Doc. 29 at 8. As discussed in detail above, supra sec. III.C.1, Defendants were not entitled to rely on this presumption. Ohio law places a greater initial burden on the debt collector, requiring the collector to swear to having good reason to believe the funds are not exempt.

source of income. According to Defendant Thomas, it "is not at all unusual that a judgment debtor will have other sources of income, be that wages, investment income, or some other type of income besides social security benefits. So the mere fact that someone has informed us that they are collecting social security benefits does not cause us reason to believe that that's their sole source of income." (Thomas Dep. 216.) As such, Defendants argue that even knowing Jordan was a social security recipient, they had sufficient information before them as to support a reasonable belief that Jordan's account contained nonexempt funds. Specifically, Defendants claim that they knew that Plaintiff owned her home, that there were no liens or encumbrances on the home, and that Plaintiff was considering refinancing her home in order to pay her debt. (Thomas Dep. 144-45, 166, 194.) Second, Defendants believed, from a review of Plaintiff's credit report, that she may have been employed and was receiving income in addition to her social security benefits. (Id. at 263-64.)

Jordan responds that Defendants in fact had little if any reason to believe that the funds in her account were anything other than her social security income and maintains that under the facts and circumstances of this case, a reasonable attorney would have more closely investigated her income prior to garnishing her account. Jordan points to the fact that Thomas never saw any of her bank documents, never spoke to anyone at the bank, never asked her directly about the contents of her account, and never asked any of the other Thomas & Thomas employees to so inquire. (See doc. 25 at 10). According to Jordan, Defendants could and should have utilized one or more of the various discovery processes available to them under Ohio law to obtain the

23

above information.[12]   The apparent lack of investigation indeed suggests that Thomas did not in

fact have any reason to believe that there existed non-exempt funds in Jordan's account.  Instead,

it appears that Thomas relied on mere speculation.

　　　　In addition to the questions of fact that exist regarding the level of investigation

Defendants performed, the Court further finds reason to question the bases Defendants set forth

for believing Jordan had income other than social security.  First, though Jordan never explicitly

stated that social security was her only source of income, the only record of income Jordan

attached in the 2002 letter that she sent to Thomas & Thomas to provide proof of her income was

a letter from the Social Security Administration.  This correspondence easily suggests that the

social security payments were indeed Jordan's only form of income.  Moreover, as to

Defendants' allegation that they believed she was attempting to refinance her home, Thomas

testified that only a week after the Thomas & Thomas collector learned of Jordan's plan to

refinance, Jordan called to inform him that she did not qualify for a refinanced mortgage.  (See

Thomas Dep. 195.)  Accordingly, viewing the evidence in a light most favorable to Jordan, the

Court finds that questions of fact preclude summary judgment on Jordan's 15 U.S.C. §

1692e(10) claim.

### 4.　　　FDCPA Claim Under 15 U.S.C. § 1692f

---

[12] Citing Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005), for the proposition that "a failure to investigate is uniformly considered objectively unreasonable," Jordan argues that Defendant's failure to take any affirmative steps to investigate the contents of her account was objectively unreasonable.  While the reasonableness of Defendant's actions is a factor in determining whether Defendants' violated the FDCPA, the question presently before the Court is not ultimately whether Defendants' actions were reasonable, but rather whether Defendant Thomas' sworn statement that he had good reason to believe Jordan's account contained non-exempt funds was false, deceptive, or misleading.

Jordan also seeks relief under 15 U.S.C. § 1692f, which guards against unfair and unconscionable conduct in the collection of a debt.[13]  Jordan alleges that Defendants acted unfairly and unconscionably by filing the garnishment action without good reason to believe Jordan's account contained non-exempt assets and without conducting a judgment debtor examination or some other means of investigation into the contents of the account.  Citing the same facts as described above, Defendants argue that the filing of the garnishment action was not unfair or unconscionable because they had a good faith belief that Jordan's account contained non-exempt assets.

The Court has already determined that conduct such as that alleged in the instant case can amount to an unfair or unconscionable means of collecting a debt, in violation of § 1692f.  See Todd, 348 F. Supp. 2d at 907-08 (holding that the plaintiffs' allegations regarding the defendants' lack of good reason to believe their attestations in the garnishment affidavit stated a claim under § 1692f); see also Hogue v. Palisades Collection, LLC, No. 4:07-cv-00109, 2007 WL 1892938 (S.D. Iowa July 3, 2007).  Relying mainly on Wilson, No. CV85-L-709, 1986 U.S. Dist. LEXIS 31002, and Shrestha, No. CIVA3:99CV00554(AWT), 2001 WL 286852, Defendants further allege that other courts addressing alleged violations of § 1692f have found that debt collectors who proceed with state garnishment actions, even when expressly informed by the debtor that the funds to be garnished are exempt, did not violate the FDCPA.

Neither Wilson nor Shrestha is dispositive to the instant case.  In Wilson, following a bench trial, the district court dismissed the plaintiffs' claims that the defendant's initiation of

---

[13] Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and sets forth specific, but not exclusive, examples of conduct that violates the section.

multiple garnishment proceedings was unfair and unconscionable.  The court found that the first garnishment proceeding did not violate the Act because under Nebraska law a debtor's examination was unavailable until the first garnishment was quashed such that the defendants could not have known that defendants' assets were exempt.  See Wilson, No. CV85-L-709, 1986 U.S. Dist. LEXIS 31002 at *13-14.  Unlike Nebraska law, however, Ohio law permits a judgment debtor's examination prior to the filing of garnishment proceedings.  See Ohio Rev. Code § 2333.09.  The district court in Wilson also rejected the claim that a second garnishment attempt, where a judgment debtor's examination was available, violated the FDCPA but grounded that decision on evidence that the defendants had a basis for believing that nonexempt funds were deposited in the debtors' account.  See Wilson, No. CV85-L-709, 1986 U.S. Dist. LEXIS 31002, at *14-15.  Here, questions of fact remain as to whether Defendants had such a basis for belief.

Shrestha is similarly distinguishable in that the court in that case determined that Connecticut law presumes that the contents of a debtor's account are non-exempt until the debtor follows the statutory requirements for claiming an exemption.  See Shrestha, No. CIVA3:99CV00554(AWT), 2001 WL 286852 at *3.  As discussed above, Ohio law places a greater burden on creditors seeking to garnish a debtor's account.  Moreover, the Court finds persuasive the recent comments of the District Court for the Southern District of Iowa, which noted in a case very similar to this one that "[t]he purpose underlying § 407(a) of the Social Security Act would be defeated if judgment creditors were allowed to garnish Social Security benefits because of an unfounded possibility that the bank account at issue may contain non-exempt funds."  Hogue, No. 4:07-cv-00109, 2007 WL 1892938, at *5.  Indeed, the Court finds as

26

it did in <u>Todd</u> that such conduct does violate the FDCPA.  At this point, questions of fact remain in this case as to whether Defendants' acts comported with the FDCPA's fairness requirements. Accordingly, the Court denies Defendants' Motion for Summary Judgment.

**V.     CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment as to Jordan's claims under 15 U.S.C. §§ 1692e(10) and 1692f.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge